EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | NO. 96-10804-DPW |
| THE BLACK & DECKER CORPORATION, ) | |
| BLACK & DECKER, INC., BLACK & DECKER ) | |
| (U.S.) INC., EMHART CORPORATION, and ) | |
| EMHART INDUSTRIES, INC., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT RELATING TO THE BEVERLY SITE**

**PROTECTED INFORMATION**

By Order of Court, this envelope is to remain sealed and the Clerk of this Court shall not reveal the contents thereof to any person other than the Court or attorneys of record for the parties until further order of this Court.

b.   **The Presence Of Contamination In The Groundwater Renders The Owned Property Exclusion Inapplicable.**

Even if the Court were to find that the contamination in the groundwater beneath the South Parcel of the Beverly site[11] did not pose a risk of flowing off-site, the presence of contamination in the groundwater itself suffices to render the owned property exclusion inapplicable. The Supreme Judicial Court has never squarely addressed the issue of whether groundwater is owned property for purposes of applying the owned property exclusion in a CGL policy.

In Allstate Ins. Co. v. Quinn Constr. Co., 713 F. Supp. 35, 40, n.7 (D. Mass. 1989), vacated as a result of settlement, 784 F. Supp. 927 (D. Mass. 1990), where the owned property exclusion was at issue, this Court, citing Gamer v. Town of Milton, 346 Mass. 617, 620 (1964), noted in dicta that a property owner owned the groundwater beneath his property. Gamer was concerned with the right of an owner of the surface to draw water. The issue actually decided in Gamer was whether negligence in withdrawing groundwater was actionable when it caused subsidence of the plaintiff's property, a question which the Supreme Judicial Court answered in the affirmative. 346 Mass. at 621.

The dicta in Gamer pertaining to ownership of groundwater rested upon two nineteenth century cases according a landowner an absolute right to draw water beneath his property even if his usage reduced the availability of groundwater to his neighbors. Davis v. Spaulding, 157 Mass. 431 (1892), and its predecessor, Greenleaf v. Francis, 35 Mass. (18 Pick.) 117 (1836), both cited in Gamer. These cases, decided more than a century ago in a different era (where, according to the Davis Court, 157 Mass. at 437, groundwater flow was governed by

---

[11]   The testimony discussed, supra, suggests that the risk of contamination migrating off-site from contaminated areas of the South Parcel is not as great as the risk of migration from the North Parcel.

"obscure natural causes"), addressed the subject of property rights solely in the context of a right appurtenant to surface ownership to draw groundwater from beneath the surface - not in the context of absolute title in the groundwater itself. While Davis refers to ownership of groundwater, this right to draw water (a property interest less than ownership of the fee) does not transform this right appurtenant to the surface to absolute ownership of the groundwater itself any more than the right to draw water from a river or stream equals absolute ownership of the river or stream.

Cases decided subsequent to Quinn strongly suggest that Massachusetts groundwater would not be considered "owned property" in the environmental coverage context. In Rubenstein, the jury had determined that the claimed remediation expenses had been incurred "for the purpose of preventing present and/or future groundwater contamination or of preventing present and/or future off-site migration of contaminants" 44 Mass. App. Ct. at 853, n.7 (emphasis added). While the Appeals Court did not specifically address Garner, its affirmance of the judgment based upon the answer to this jury question, which was framed in the disjunctive, amounted to a holding that groundwater is not owned property for purposes of the owned property exclusion. In its discussion, the Appeals Court emphasized both that the contamination was in the groundwater and that the contaminants in the groundwater threatened to migrate off-site without suggesting that the off-site effect was necessary to its holding. 44 Mass. App. Ct. at 854.

Earlier, the Superior Court concluded in United Technologies Corp. v. Liberty Mut. Ins. Co., No. 877172, 1993 WL 818913, at *11 (Mass. Super. Ct. Aug. 3, 1993), that "it is not likely that the Massachusetts appellate courts would apply the owned-property exclusion to contaminated groundwater." Thus, "[t]he owned-property exclusion will not bar coverage of

-51-

cleanup costs undertaken on plaintiff's property where there is actual or threatened damage to third party property, including groundwater beneath the insured's property." Id. This decision was recently quoted at length in Preferred Mut. Ins. Co. v. Gordon, No. 02-3147, 2003 WL 21077026, at *13 (Mass. Super. Ct. May 13, 2003), although the court did not reach the groundwater ownership issue. In a third Superior Court case, Marks v. Lumbermens Mut. Cas. Co., No. 94-0917, 1995 WL 502231, at *4 (Mass. Super. Ct. Aug. 16,1995), the Superior Court relied upon groundwater contamination as an alternative ground for rejecting an insurer's argument for the applicability of the owned property exclusion, stating that "the longstanding rule in Massachusetts of absolute ownership of groundwater is being closely reexamined in cases pertaining to hazardous contamination." These cases make it clear that putting a contaminant into the groundwater is materially different from drawing groundwater.

United Technologies concluded that Gamer should not be extended to the environmental coverage arena in view of the statutory declaration that "waters of the Commonwealth" include groundwater. 1995 WL 818913, at *11 (citing Mass. Gen. Laws ch. 21E, § 2 and Mass. Gen. Laws ch. 21G, § 2). Marks pointed out that Gamer "did not relate to the issue of pollution containment" and "was decided over thirty years ago [now almost forty years ago], before many current understandings of environmental interdependence had surfaced." 1995 WL 502231, at *4, n.7. Davis and Greenleaf, of course, are much older than that. Indeed, the Court in Davis, upon which Gamer relied, stressed the absence of knowledge as to how groundwater flowed as support for its decision, referring to "the operation of obscure natural causes." 157 Mass. at 437. Of course, today those causes are not obscure at all.

The Supreme Judicial Court has recognized that the rule of Davis, upon which the Gamer dicta is predicated, may be antiquated even where the question of groundwater usage is

squarely presented. The Supreme Judicial Court discussed the viability of Davis in Prince v. Stockdell, 397 Mass. 843 (1986), which, like Davis, involved the rights to the use of groundwater as between two adjoining property owners, with the plaintiff advocating a "reasonable use test." The Court found it unnecessary to "reach this question" but stated that "[i]n another case, we might be inclined to reexamine the doctrine which gives the owner of the overlying land absolute control over subsurface water on such land." 397 Mass. at 845.

Under Rubenstein and the Massachusetts environmental statutes, groundwater is not "owned property" in the environmental coverage context. The Massachusetts trial courts have been loath to apply the groundwater ownership rule to insurance coverage claims. While Greenleaf and Davis, in their day, were "in accord with the weight of authority," see Davis, 157 Mass. at 434, Massachusetts would now be going against the clear weight of authority were it to import the rule of Greenleaf and Davis into modern environmental coverage law. With CERCLA and its state counterparts on the books, a property owner's "absolute control" of groundwater, in the context of groundwater contamination, is a thing of the past. Accordingly, the undeniable groundwater contamination is a sufficient basis for holding that the owned property exclusion is not applicable to Black & Decker's claim.

7. **Liberty Mutual Has Failed To Discharge Its Burden To Prove Prejudice, As A Matter of Law, From Purported Lack Of Notice.**

Liberty Mutual's attempt to obtain summary judgment due to purportedly late notice runs afoul of the notice/prejudice rule codified in Mass. Gen. Laws ch. 175, § 112. Liberty acknowledges, as it must, that an insurer seeking to escape its obligations on the ground of late notice must prove that any late notice "actually prejudiced its position". E.g., Darcy v. Hartford Ins. Co., 407 Mass. 481, 490 (1990). Such prejudice "must have been material and specific" and must be of a nature such that the insurer "could not by its own actions reasonably