# EXHIBIT 5



# CSC
# Legal®
# Solutions

**LEGALGARD REBUTTAL REPORT OF:**

**Breed, Abbott & Morgan;**
**Day, Berry & Howard;**
**Miles & Stockbridge**
**Swidler Berlin Shereff Friedman**

**RECIPIENT:**

**CHRISTOPHER J. TOMBETTA, ESQUIRE**
**HOLLAND & KNIGHT**
**10 St. James Avenue**
**Boston, MA 02116**

**Counsel To Liberty Mutual Group**

**PREPARED BY:**

**CHARITY A. CONNOR, ESQUIRE**
**Senior Project Manager**

**APRIL 3, 2003**

**Privileged and Confidential**
**Legalgard Copyright 2003**

CSC Legalgard Solutions
One Penn Center at Suburban Station
1617 John F. Kennedy Boulevard
Suite 700
Philadelphia, PA 19103

Tel: (215) 814-6300
Fax: (215) 814-6255



# TABLE OF CONTENTS

INTRODUCTION/PURPOSE                                          PAGE  1

SCOPE                                                        PAGE  2

EXPLANATORY COMMENTS                                         PAGE  3

SUMMARY OF RECOMMENDED POTENTIAL FEE REDUCTIONS              PAGE  4

- Day, Berry & Howard[1]                                     PAGE  4
- Swidler & Berlin[2]                                        PAGE  5
- Breed Abbott & Morgan[3]                                   PAGE  6
- Miles & Stockbridge[4]                                     PAGE 7

FEE ISSUES                                                   PAGE  8

DISBURSEMENTS                                                PAGE 16

---

[1] See Charts in **Exhibit D**.
[2] See Charts in **Exhibit E**.
[3] See Charts in **Exhibit F**.
[4] See Coded Invoices in **Exhibit G**.

Final Report Dated 04/03/03
CAC

Privileged and Confidential
Legalgard Copyright 2003

# INTRODUCTION

Liberty Mutual Group ("Liberty Mutual") previously retained Legalgard to review legal bills of the five (5) law firms set forth below in connection with their representation of the Black & Decker Corporation and related corporate entities ("Black & Decker"). These invoices are listed and summarized below:

| LAW FIRM | INVOICE DATES | LEGAL FEES | EXPENSES | TOTAL |
|---|---|---|---|---|
| Day, Berry & Howard ("Day") | 07/89-11/96 | $1,947,376.00 | $140,512.30 | $2,087,888.30 |
| Swidler & Berlin ("Swidler") | 07/89-09/97 | 1,014,760.00 | 68,031.65 | 1,082,791.65 |
| Miles & Stockbridge ("Miles") | 04/94-09/97 | 75,377.00 | 9,239.04 | 84,616.04 |
| Siegel, O'Connor, Schiff, Zangari & Kainen ("Siegel") | 08/89-04/93 | 70,930.00 | 1,960.38 | 72,890.38 |
| Porzio, Bromberg & Newman ("Porzio") | 06/94-12/95 | 58,398.61 | 5,925.42 | 64,324.03 |
| **TOTAL:** | | **$3,166,841.61** | **$225,668.91** | **$3,392,510.40** |

Legalgard produced a report based on that review in 1998. We incorporate that report by reference. Legalgard's fees are set forth in **Exhibit A**.

Legalgard has now been requested to prepare a supplemental report addressing the following invoices: Day, Berry & Howard ("Day") 6/19/95–11/19/02, totaling $36,283.00 in fees and $695.82 in expenses, for a total of **$36,978.82**; Swidler Berlin Shereff Friedman ("Swidler") 01/31/92-11/14/02, totaling $52,813.75 in fees and $6,566.25 in expenses, for a total of **$59,380.00**; Breed Abbott & Morgan ("Breed") 01/31/86–05/22/91, totaling $27,844.00 in fees and $1,239.19 in expenses, for a total of **$29,083.19**; and Miles & Stockbridge ("Miles") 03/29/96–11/30/00, totaling $50,839.50 in fees, $4,224.10 in expenses, for a total of **$55,063.60**. See **Exhibit B**. Legalgard also reviewed the long term exposure invoices and found that they also appeared to be unreasonable. Legalgard reserves its rights to supplement this report based upon its review of additional information.

# PURPOSE

The purpose of this Legal Bill Review is to assess the fairness, reasonableness and appropriateness of the billings submitted to Liberty Mutual and sought to be recovered by its insured in this litigation.

Privileged and Confidential
Legalgard Copyright 2003

# SCOPE

Legalgard performed a line-by-line review of the firms' invoices. We evaluated:

- The format and content of the invoices, i.e., whether they contained sufficient information, itemization and detail.

- How many of the firms' personnel were being utilized and whether they were performing activities appropriate for their levels of expertise.

- Whether there was any overlap or duplication of effort and/or whether unnecessary numbers of individuals were billing for the same or substantially similar activities as other persons.

- Whether there were other inappropriate activities performed.

- Whether the disbursement charges were appropriate.

- Whether the time charges were fair, accurate and reasonable in light of the activities actually performed.

Legalgard provided:

- An identification of billing production and format deficiencies.

- An identification and quantification of inappropriate or questionable professional services and disbursement areas.

Privileged and Confidential
Legalgard Copyright 2003

# EXPLANATORY COMMENTS

The invoices were coded in accordance with Legalgard's internal coding parameters, in conjunction with Legalgard's business rules. Grouped entries were "unblocked" in some cases and coded as if they were individual line item entries. Where grouped time entries were divided, Legalgard followed our usual quantification methodology. This methodology is explained in **Exhibit C**.

Special measures were required to process and evaluate the Day invoices. Many of Day's invoices were comprised of long narrative paragraphs containing numerous functions with a single time charge. The firm's invoice did not delineate the timekeeper who performed the function, the date on which the function was performed, the time charge or the cost per function.

Because of the narrative format of these invoices, it was impossible to determine which timekeeper performed each task and, therefore, the hourly rate attributable to each task. We were thus required to establish a blended rate, determined by dividing the total charge for the entry (and often the invoice) by the number of hours.

Further, since the actual timekeeper who performed each task could not be determined, we used the initials "UNK" to reference "unknown" timekeepers.

Also, this firm blocked entire invoice periods' work in one paragraph, with one time charge. Therefore, we were required to "unblock" the entries even prior to coding. Although Legalgard normally uses quantification methods which attempt to accurately attribute time charges to functions, we must use the averaging method where the number of functions in the entry is so high. Although we would have preferred to provide significant weight to more time-consuming functions, such as deposition attendance, it was simply untenable to do where the entry is so large. Therefore, in this matter an analyst took the entry time charge and divided it by the number of functions. Although this is a rough estimate, it is the best which could be obtained given the lack of vital information provided in the invoices.

## SUMMARY OF RECOMMENDED
## AND POTENTIAL FEE REDUCTIONS

### DAY, BERRY & HOWARD

Fees:

| | |
|---|---:|
| Vague Descriptions | $8,932.36 |
| Intra-Office Conferences (50% reduction) | 603.95 |
| Possible Duplication of Effort | 846.84 |
| Legal Research | 589.90 |
| Secretarial/Administrative/Clerical Functions | 1,179.83 |
| **Total:** | **$12,152.88** |

Disbursements:

| | |
|---|---:|
| Grouped Expenses | $576.68 |
| **Total:** | **$576.68** |

# SUMMARY OF RECOMMENDED
## AND POTENTIAL FEE REDUCTIONS

## SWIDLER BERLIN SHEREFF FRIEDMAN

Fees:

| | |
|---|---|
| Vague Descriptions | $5,564.50 |
| Intra-Office Conferences (50% reduction) | 2,474.88 |
| Administrative Intra-Office Conferences (100% reduction) | 166.75 |
| Duplicate Attendance | 1,585.50 |
| Legal Research | 2,777.25 |
| Questionable Secretarial/Clerical Functions | 643.75 |
| **Total:** | **$13,212,63** |

Disbursements:

| | |
|---|---|
| Computerized Legal Research | $229.83 |
| Express/Overnight Mail Charges | 40.20 |
| Fax/Telecopier Charges | 61.85 |
| Messenger/Courier/Delivery Charges | 11.63 |
| Photocopy Charges | 1,792.00 |
| Postage | 18.93 |
| Telephone Charges | 111.67 |
| Unspecified Travel/Transportation Charges | 2,034.52 |
| Word Processing Charges | 28.50 |
| **Total:** | **$4,329.13** |

Privileged and Confidential
Legalgard Copyright 2003

# SUMMARY OF RECOMMENDED
# AND POTENTIAL FEE REDUCTIONS

## BREED ABBOTT & MORGAN

Fees:

| | |
|---|---:|
| Vague Descriptions | $4,987.00 |
| Intra-Office Conferences (50% reduction) | 1,730.30 |
| Duplicate Attendance | 77.50 |
| Legal Research | 3,649.00 |
| Secretarial/Administrative/Clerical Functions | 31.00 |
| **Total:** | **$10,474.80** |

Disbursements:

| | |
|---|---:|
| Fax/Telecopier Charges | $82.00 |
| Messenger/Courier/Delivery Charges | 56.00 |
| Photocopy Charges | 62.40 |
| Postage | 12.61 |
| Telephone Charges | 243.78 |
| Unspecified Travel/Transportation Charges | 300.10 |
| Word Processing Charges | 482.30 |
| **Total:** | **$1,239.19** |

**Privileged and Confidential**
**Legalgard Copyright 2003**

# SUMMARY OF RECOMMENDED
# AND POTENTIAL FEE REDUCTIONS

## MILES & STOCKBRIDGE

Fees:

| | |
|---|---|
| Vague Descriptions [Code 5] | $3,176.50 |
| Intra-Office Conferences (50% reduction) [Code 33] | 1,371.63 |
| Legal Research [Code 70] | 4,006.75 |
| Secretarial/Administrative/Clerical Functions [Codes 10, 11] | 489.50 |
| **Total:** | **$9,044.38** |

Disbursements:

| | |
|---|---|
| Photocopy Charges | $374.80 |
| Postage | 36.48 |
| Fax/Telecopier Charges | 332.00 |
| Messenger/Courier/Delivery Charges | 73.49 |
| Unspecified Travel/Transportation Charges | 1,203.96 |
| Computerized Legal Research | 909.99 |
| Out-of-Pocket Expenses | 110.08 |
| **Total:** | **$3,040.80** |

# FEE ISSUES

1.    <u>Billing Format</u>:

The format of many of the invoices is so flawed as to significantly hinder meaningful analysis and preclude reasonable accountability on the part of the law firms. The deficiencies included:

A.    <u>Grouping</u>:

The firms' billing formats often lack time itemization of specific activities, whereby multiple activity descriptions are accompanied by a single time charge. With respect to the Day firm, just one run-on paragraph description is provided for each invoice with a lump sum fee charge in all but the few invoices issued in 2002 that are included in this review. This prevents any analysis of the reasonableness of the time charges billed by the firm. This is a very concerning practice and, in Legalgard's opinion, does not provide enough information to justify any fee payment to the firm. The Swidler firm also grouped activities as did the Breed and Miles firms.

This practice of "grouping" makes it impossible to evaluate the amount of time spent performing each individual function within a grouped entry.

B.    <u>Vague Descriptions</u>:

Timekeepers should employ complete and specific descriptions when setting forth the various functions performed. For example, descriptions should include the subject or purpose of correspondence generated or reviewed as well as identifying the addressees of correspondence generated and the authors of correspondence reviewed. Similarly, participants in telephone conferences and meetings should be identified, and the general nature or purpose of the telephone conference or meeting should be provided. Pleadings and discovery documents reviewed or generated should be specifically identified. The utilization of clear, concise and complete descriptions of the functions performed significantly enhances a firm's accountability. Incomplete or vague descriptions of activities performed should be eliminated. For example, use of the descriptor "trial preparation" is insufficient to lend accountability. Instead, timekeepers should be required to set forth exactly what activities were

performed to prepare for trial. All functions should be fully and completely described.

With respect to some of the billing entries, these firms describe legal functions in the invoices sufficiently. In those instances, the bill reviewer can reasonably determine what work was performed. In the great majority of instances, however, activities are described so generally that it is impossible to determine what work was actually performed. Without specific description, the bill reviewer will have difficulty evaluating the work performed. Vague descriptors hinder the evaluation of whether tasks performed are inappropriate, whether there is duplication and overlap of effort, and whether the time charges are unreasonable, among other problems. All three firms reviewed charged for vague descriptions.

The use of vague descriptions renders it difficult to judge whether the activity was appropriate. For example, the correspondence reviewed by one timekeeper without description may be the same as that handled by another timekeeper, thereby evidencing a duplication of effort. Further, the correspondence reviewed may be a one-line enclosure letter, in which case the time charge may be excessive. Clearly, it is impossible to evaluate the appropriateness and necessity of any activity without knowing precisely what function was performed.

- **Day**
  In addition to the virtual omission of time charges, this firm also utilized vague descriptions. The firm's descriptions often lacked a subject matter reference with respect to telephone calls and correspondence. Further, "preparation" was not further described. The term "attention to" was used, leaving the bill reviewer without any ability to determine the reasonableness of the charge.

- **Swidler**
  The firm's descriptions were often vague, providing no indication of the subject matters of telephone calls and correspondence.

- **Breed**
  This firm also utilized vague descriptions, often related to telephone calls.

- **Miles**
  This firm utilized vague descriptions.

**Privileged and Confidential**
**Legalgard Copyright 2003**

**Recommendation:**

Proper billing requires specific and detailed descriptions of the function performed in the invoices with respect to every entry. Often the inclusion of a "re:" line will suffice in correcting a billing description problem. Legalgard has compiled in **Charts D1, S1, B1** and the Miles invoices those entries which are vague. The charts total **$8,932.36, $5,564.50** and **$4,987.00,** respectively. The Miles coded entries total **$3,176.50.** (It should be noted that vague entries which can be otherwise categorized are placed in another category. For example, "conference with MB re: case".)

C.     Minimum/Incremental Time Charge:

Legalgard recommends that law firms utilize a minimum and incremental time charge of .10 hour or six minutes. Many functions can be handled in this time period. Use of a higher minimum and incremental time charge results in inaccurate and excessive billing charges.

- **Day**
  It is impossible to make any determination regarding this firm's minimum and incremental time charges given the firm's billing format.

- **Swidler**
  This firm utilized a minimum and incremental time charge of .25 hour.

- **Breed**
  This firm appeared to utilize a minimum and incremental time charge of .10 hour.

- **Miles**
  This firm appeared to utilize a minimum and incremental time charge of .10 hour.

**Recommendation:**

Legalgard submits that the minimum and incremental time charge utilized should be .10 hour, or six minutes. It is clear, however, that some of these firms employ a minimum and incremental time charge of at least .25 hour or fifteen (15) minutes, which can obviously cause dramatic increases in legal fees. It is Legalgard's position that a .25 hour minimum time or incremental time charge is excessive because many paralegal and attorney

functions, such as reviews of short correspondence, preparation of correspondence and telephone calls, can be completed within six (6) minutes and charged at .10 hour.

2.    Team Approach/Overstaffing:

The utilization of personnel by these firms appears to be inefficient, and as a result, the cost of handling the litigation may be excessive. The firms appear to be abusing the "team approach". Legalgard defines abuse as utilization of more personnel than necessary to handle a case. Although a relatively large and specialized team is sometimes needed, even complex and document oriented cases can be subject to excessive staffing practices.

- **Day**
  This firm's billing format precludes analysis of the staffing approach. As addressed above, there is no indication in most of the invoices reviewed of whom is undertaking any task. Moreover, only two of the pre-2002 invoices provide a timekeeper summary. These summaries indicate as many as five timekeepers worked on one matter over a month long period. Legalgard questions the need for such a large team. Evaluation of utilization of personnel (such as whether a partner handles work suitable for a junior associate) cannot be evaluated.

- **Swidler**
  Eight timekeepers worked on this matter. They were:

  | Initials | Hourly Rate(s) | Hours |
  | --- | --- | --- |
  | BLM | $255 - $290 | 90.50 |
  | ESW | $145 | 72.00 |
  | RT | $255 - $280 | 43.00 |
  | MBW | $185 | 13.50 |
  | LMG | $175 | 8.50 |
  | DS | $90 | 3.25 |
  | JMK | $215 - $335 | 1.75 |

  Legalgard notes that a significant portion of the time was billed by timekeepers charging $255/hour or more.

- **Breed**
  Five timekeepers worked on the matter with respect to most of the invoices. Legalgard was required to estimate the hourly rates:

| Initials | Hourly Rate(s) | Hours |
|----------|----------------|-------|
| BLM | $180 - $225 | 83.6 |
| VKS | $110 - $130 | 46.9 |
| JCM | $150 - $198 | 31.0 |
| JSG | $45 - $50 | 1.2 |
| MBW | $125 | .5 |

Legalgard notes that more than half the time was billed by the senior timekeepers. The professional levels of the timekeepers are not given.

- **Miles**
  Five timekeepers worked on the matter.

| Initials | Hourly Rate(s) | Hours |
|----------|----------------|-------|
| MCH | $160 - $250 | 177.1 |
| JE | $65 | 10.8 |
| JHW | $140 | 10.6 |
| KP | $110 | 10.0 |
| TEL | $220 - $290 | 6.3 |

**Recommendation:**

Legalgard recommends that Day be required to supplement its invoices to identify the timekeepers handling each task, their hourly rates and professional levels. We recommend that all firms be questioned about their staffing approach and the professional levels of each timekeeper.

3.    Intra-Office Conferencing:

A frequent by-product of overstaffing is the need for members of the team to have meetings in order to keep each other informed of the status of the case, to distribute assignments and to provide training for less experienced personnel. Although the use of vague descriptions and excessive grouping of functions hampered the evaluation of the bills, it appeared that some administrative,

supervisory, educational and status-related intra-office conferences were billed by these firms.

It is Legalgard's position that the cost of conferences which are administrative, supervisory or status-related are overhead costs and non-billable (reduced by 100%). Quality control and assigning work are administrative costs of running the business of a law firm. Moreover, the need arises for a high number of conferences because too many people are working on these matters. Firm personnel need to meet in order to apprise each other of recent developments and delegate assignments.

Billing for an occasional conference between key attorneys where they discuss strategy is reasonable. These conferences should be held rarely, however. An <u>excessive</u> amount of conferencing for any stated reason is inappropriate. These firms routinely and regularly billed for intra-office conferencing.

- **Day**
  Legalgard found three entries wherein the firm charged for internal conferences. The firm's vague descriptors and large block billing practices may conceal the billing of additional conferences.

- **Swidler**
  The firm appeared to bill excessively for conferences. The firm charged for clearly administrative meetings.

- **Breed**
  This firm billed for a large number of internal conferences.

- **Miles**
  This firm billed for a large number of internal conferences.

## Recommendation:

Legalgard recommends that Liberty Mutual seek a total reduction in the billings for the amounts charged for administrative, supervisory or status-related conferences set forth in **Chart S2** and a reduction of fifty percent (50%) for all other intra conferences as listed in **Charts D2, S3, B2** and in the coded Miles invoices.

4.    <u>Duplicate Attendance/Duplication of Effort</u>:

Legalgard found that the firms billed for duplicate attendance at functions by multiple firm members as well as possible duplication of effort.

- **Day**
  Due to lack of timekeeper identification, this area of billing cannot be fully evaluated.    We captured entries which may represent duplication of effort.

- **Swidler**
  Legalgard noted duplicate attendance at a meeting and in conference calls.

- **Breed**
  Legalgard noted two instances of duplicate attendance.

- **Miles**
  Due to vague descriptions, Legalgard was not able to fully evaluate duplication of effort.    There did not appear to be charges for duplicate attendance.

<u>Recommendation</u>:

Legalgard has compiled a list of those entries which depict duplicate attendance and duplication of effort.   It is Legalgard's position that the cost for secondary personnel (defined as the timekeeper who appears to be at a junior level) should be reduced from the invoices as shown in **Charts D3, S4 and B3**.

5.    <u>Legal Research</u>:

Legalgard attempted to evaluate whether the legal research charges were reasonable.   Without a review of the file and a discussion about the matter with the firm, Legalgard cannot definitively determine whether certain legal research charges are reasonable.   Legalgard can, however, identify potential areas of concern relative to the legal research performed.

Legalgard can attempt to evaluate whether research appears elementary, whether the professional levels or hourly rates of those performing the research seem appropriate, and whether the time charges related to legal research seem excessive. All four firms charged for legal research. Breed, in particular, charged a substantial amount of time to legal research, performed by timekeepers billing

up to $255/hour. The vague descriptions prevented full analysis. We are concerned that some of the research was elementary.

**Recommendation:**

Legalgard found that all four firms charged for research. See **Charts D4, S5** and **B4**, respectively and the coded Miles invoices. We recommend that payment for legal research be withheld pending firm explanation.

6.    Professionals Performing Secretarial/Administrative Functions:

The professionals at the firms are charging for performance of clerical functions. Legalgard considers the cost for performing clerical functions to be a cost of doing business and not properly chargeable to a client. These activities should be factored into the firms' hourly rates. Clerical activities billed these firms including: updating pleadings indices; preparing files for storage and sending a fax.

Additionally, due to vague descriptions, Legalgard identified entries with respect to which Legalgard could not determine the nature of the work performed. As described, however, these entries appeared clerical. These "Questionable Secretarial/Clerical" charges include making travel arrangements.

**Recommendation:**

Legalgard recommends that the amounts charged related to professionals performing clerical tasks, including questionable charges, as shown in **Charts D5, S6** and **B5** and the coded Miles invoices, be reduced from the billings.

# DISBURSEMENTS

**Note:** the Day firm grouped all expenses in each invoice with a single expense charge.  This billing method is unacceptable and does not allow accounting of expenses.

All of the questioned expenses for the firms are included in **Charts D6, S7** and **B6** and in the coded Miles invoices.

1.    Photocopies:

Legalgard determined that there were charges for photocopies by all the firms. The invoices did not disclose the number of copies made, or the cost per page or the documents being photocopied.  It is Legalgard's position that costs related to photocopying are an overhead item and should be considered an operational expense of the law firm.  Photocopying is a typical expenditure and should be appropriately budgeted for in the hourly rate.  Thus, it is Legalgard's recommendation that there be no reimbursement for photocopying expenses with the exception of extraordinary photocopying, which should be sent out for bulk copying and charged at the national bulk photocopy rate, which ranges between $.03 and $.12 per page.

**Recommendation:**

Legalgard cannot determine the total for the Day firm for photocopy expense. The Swidler firm charged **$1,792.00** for "photocopy and printing".  Breed charged **$62.40** and Miles charged **$374.80**.  Legalgard recommends that these charges be disallowed.

2.    Telecopies/Facsimile:

Legalgard determined that Day, Swidler, Breed and Miles firms billed for telecopy charges.  Swidler charged **$61.85**, Breed charged **$82.00** and Miles charged **$332.00**.  The method of determining these charges (e.g., flat rate per page, outgoing telephone charges, etc.) is not specified.

**Recommendation:**

It is Legalgard's opinion that facsimile charges are a typical operating expense for any business, including law firms. As a result, these charges should not be reimbursed. Alternatively, should Liberty Mutual consider fax reimbursement to be appropriate, on-line telephone provider statements should be provided with the billings and only actual line charges to send <u>outgoing</u> transmissions be reimbursed.

3.    **Telephone Charges:**

Legalgard notes that the firms billed for "telephone" charges. Legalgard believes that long distance telephone charges are appropriate disbursements. Conversely, we believe that local telephone charges are part of a firm" overhead and are not properly reimbursable. All the firms billed for this expense. The charges by Swidler were **$111.67** and the charges by Breed were **$243.78**. Miles' charges appeared to be limited to long distance charges.

**Recommendation:**

Legalgard recommends that these charges be reduced from the billing absent further documentation to support these charges.

4.    **Messenger/Courier/Overnight Delivery:**

These firms charged for messenger services and express mail. It is Legalgard's opinion that the use of messenger services and express mail on a routine basis is a cost of doing business for the firms, and should not be passed along to the client. In those extraordinary situations in which a client requests the use of such expedited delivery service or where such services are required by circumstances beyond the control of the law firm, reimbursement may be considered. Swidler, Breed and Miles charged for this expense. Swidler charged **$40.20** for express mail and **$11.63** for delivery service. Breed charged **$56.00** for these expenses and Miles charged **$73.49**.

**Recommendation:**

Legalgard recommends that these charges be deducted absent evidence of extraordinary situations as described above.

Privileged and Confidential
Legalgard Copyright 2003

5.    <u>Computerized Legal Research</u>:

The Swidler and Miles firms charged for computerized legal research (Lexis, Westlaw). It is Legalgard's position that computerized legal research expenses are not a reimbursable disbursement. Computerized research charges are analogous to charges for obtaining, maintaining and updating a hard copy law library. Since the expenses associated with the possession and maintenance of a hard copy library are considered part of the firm's overhead, the expenses of a computerized system should also be borne by the law firm.

**Recommendation:**

Legalgard recommends a reduction of **$229.83** by the Swidler firm and **$909.99** for Miles for this expense.

6.    <u>Postage</u>:

Legalgard considers routine postage to be part of any law firm's overhead, and therefore not properly reimbursable by the client. Extraordinary postage expenses may be properly reimbursable under certain circumstances. For example, if a firm is required to send a notice to many parties (as in a class action), or if an unusually large volume of documents (such as in connection with a document production) must be mailed, extraordinary postage expenses may be properly reimbursable. Those circumstances are not reflected in these bills. All four firms billed for this expense. The Swidler firm charged **$18.93**, Breed charged **$12.61** and Miles charged **$36.48**.

**Recommendation:**

Legalgard recommends that postage charges be reduced from the invoices.

7.    <u>Word Processing/Out-of-Pocket</u>:

The Breed and Swidler firms charged for word processing, and Day charged for automated document preparation. These are overhead costs to a firm and are not usually billed by firms. Miles charged for "out of pocket" expenses, which were not further explained.

**Recommendation:**

Legalgard recommends that these charges be reduced from the invoices. They cost **$28.50** at Swidler, **$482.30** at Breed, and **$110.08** at Miles.

8.    **Unspecified Travel and Meals:**

Miles charged $1,203.96 for travel and meals, without further explanation or substantiation. Likewise, breed and Swidler did not explain expenses. In order to keep a client properly informed of the nature, basis, or reasonableness of activities and the billing for same, all expenses, including meals and travel, must be specifically described as to the date and purpose of the meal or travel, distance of the travel, who traveled, etc. Without such description, these expenses should not be paid. Unspecified travel and meal charges in these invoices should not be reimbursed absent itemization and supporting documentation. The Day firm charged for grouped expenses including unexplained meals, Swidler charged for parking, rental car, airfare and meals without explanation or documents, Breed charged for local and out-of-town travel, and Miles charged for travel and meals. These cost **$2,034.52** at Swidler, **$300.10** at Breed and **$1,203.96** at Miles.

**Recommendation:**

Legalgard recommends that these expenses be withheld pending explanation.

PREPARED BY:

Charity A. Connor, Esquire