```
 1                  UNITED STATES DISTRICT COURT

 2                    DISTRICT OF MASSACHUSETTS

 3      * * * * * * * * * * * * * * * *
                                       *
 4      LIBERTY MUTUAL                 *
                     Plaintiff         *
 5                                     *
             VERSUS                    *   CA-96-10804-DPW
 6                                     *
        BLACK & DECKER                 *
 7                   Defendant         *
                                       *
 8      * * * * * * * * * * * * * * * *

 9           BEFORE THE HONORABLE DOUGLAS P. WOODLOCK

10              UNITED STATES DISTRICT COURT JUDGE

11                            HEARING

12                         APRIL 8, 2004

13      APPEARANCES:

14         RALPH T. LEPORE, III, ESQ. AND JANICE KELLEY
           ROWAN, ESQ., Holland & Knight, LLP, 10 St. James
15         Avenue, Boston, Massachusetts  02116, on behalf
           of the Plaintiff
16
           JACK R. PIROZZOLO, ESQ. AND RICHARD L. BINDER, ESQ.,
17         Willcox, Pirozzolo & McCarthy, 50 Federal Street,
           Boston, Massachusetts  02110, on behalf of the
18         Defendants

19

20                            Courtroom No. 1 - 3rd Floor
                              1 Courthouse Way
21                            Boston, Massachusetts 02210
                              9:05 A.M. - 9:40 A.M.
22
                Pamela R. Owens - Official Court Reporter
23              John Joseph Moakley District Courthouse
                     1 Courthouse Way - Suite 3200
24                     Boston, Massachusetts  02210

25         Method of Reporting:  Computer-Aided Transcription
```

1    counterclaim.  My view would be that, depending on what
2    the settlement documents say and, alternatively, the law
3    of collateral estoppel, it probably is gone, anyway.
4    They're both gone anyway.  So that's my preliminary
5    view.  But I would assume that those will be dealt with.
6    And then if there's some dispute about it, I'll try
7    to --
8             MR. PIROZZOLO:  Frankly, I had forgotten.  I
9    think we're still on this case --
10            THE COURT:  Yes.
11            MR. PIROZZOLO:  -- as well.  And as we
12   reviewed it, I realized that we had not.
13            THE COURT:  Okay.  Well, so you'll try to work
14   that out as well --
15            MR. LEPORE:  Yes, Your Honor.
16            THE COURT:  -- with some sort of stipulation
17   with respect to the dismissal of those cases.
18            Now, this question of attorney's fees in the
19   coverage lawsuits -- and that is the source of
20   allocation and so on -- the animating vision that I have
21   of all of this is -- what I'm trying to do is having
22   resolved particular cases, get them packaged so that
23   they can be appealed.
24            MR. LEPORE:  Right.
25            THE COURT:  And I want to do it in the tidiest

1    sort of way.  As I understand what Black & Decker has
2    been saying, it is it's very difficult to allocate the
3    coverage.
4            MR. PIROZZOLO:  Well, sometimes it is.
5    Sometimes it isn't.  Yes.
6            THE COURT:  Okay.  I mean -- so, in a
7    practical way, what do you want to do?  Assume that what
8    you're going to have is 30 odd site cases and you have
9    got a 93A good faith case.
10           MR. PIROZZOLO:  Right.
11           THE COURT:  How do you propose to have final
12   judgments in those cases with respect to the questions
13   of attorney's fees?
14           MR. PIROZZOLO:  What I think Mr. Lepore and
15   I were prepared to agree on -- and it's a very narrow
16   agreement.  That is the actual amount of fees and
17   expenses to be awarded within a particular category.
18   It's something we will try to work out and then failing
19   that, rather than disturbing the Court and jury and so
20   on, we'd use some kind of arbitration, but that the
21   Court would adjudicate what we're entitled to.  For
22   example, in Bostik, that we would be entitled to the
23   expenses of attendance at and preparation for trial of
24   the Bostik case.
25           THE COURT:  Yes.

1      MR. PIROZZOLO: That we would be entitled to
2  expenses of discovery, particularly related to Bostik.
3  Beyond that, that we would be entitled to a percentage
4  and allocated amount of expenses in relation to, for
5  example, the choice of law issues, the lost policy
6  issues, so that we would seek an adjudication as to the
7  components of a fee award without necessarily getting to
8  the accounting of the dollar amount. I don't know if
9  that works for the Court, but that is certainly what we
10 visualized.
11     THE COURT: Well, it does and it doesn't. Are
12 you assuming that you're going to have an allocation
13 that is a hundred percent of your cost for purposes of
14 your fees for everything that you recover? For
15 instance, are you going to -- you have lost some things
16 in the case.
17     MR. PIROZZOLO: That plays into it, of course.
18     THE COURT: And is it your assumption that I'm
19 going to make this allocation in each individual case?
20 That is, the allocation of how much you get for lost
21 policies, lost --
22     MR. PIROZZOLO: There's two levels, too, Your
23 Honor. For example, in Bostik and I think now -- or
24 Whitman and now Bostik, I think there was breach of the
25 duty to defend. That alone gives rise to attorney's

1  fees.

2           THE COURT:  Well, what I guess I'm getting at
3  is do you see this being resolved in the individual
4  cases?  That is --

5           MR. PIROZZOLO:  Yes.

6           THE COURT:  -- before there is a judgment that
7  is appealable?

8           MR. PIROZZOLO:  Yes.  I see the judgment in
9  the individual cases to be something like expenses of
10 trial awarded, --

11          THE COURT:  Right.

12          MR. PIROZZOLO:  -- discovery for Bostik are
13 awarded, some percentage of the choice of law expenses
14 are awarded, some percentage of the general
15 administrative costs of running the case are awarded
16 on some basis.

17          THE COURT:  And that in the absence of some
18 litigable issue or agreement on that, there's a
19 litigable issue of what the allocation percentage is for
20 each of these things?

21          MR. PIROZZOLO:  I guess that's where -- as I'm
22 saying it, I'm wondering how you do that without knowing
23 the numbers.

24          THE COURT:  Right.

25          MR. PIROZZOLO:  I'm beginning to see that may

```
 1    be the flaw in the --
 2              THE COURT:  Well, what I'd like you to do is
 3    think about that.  And what I want is a serviceable way
 4    of getting these cases in a posture for final judgment.
 5    And that includes the ones you've lost on, too, so that
 6    we get these judgments in place and the parties can go
 7    from there on this.
 8              So, I mean, I guess you're going to have to
 9    think through -- we're all going to have to think
10    through this question of attorney's fee more clearly.
11    And it will rise obviously in Bostik and Whitman because
12    that's where you presumably will get them.
13              MR. PIROZZOLO:  Now, maybe -- the Judge may go
14    so far as to say we're entitled to attorney's fees,
15    period.  That's appealable, the amount to be determined
16    in a subsequent proceeding.
17              THE COURT:  Well, that's the customary means
18    of dealing with attorney's fees in most civil cases when
19    there is some sort of cost shifting arrangement.  Some
20    of the districts -- we don't have it.  But some of the
21    districts have a rule that says you have to file 30 days
22    after a mandate issues from the Court of Appeals on the
23    underlying case.  I think I'm indifferent on this,
24    except having this strong view that we really have to
25    get final judgments.  And I'm not opposed to the idea
```

```
 1      which underlines those rules in other jurisdictions
 2      of the 30 days after mandate of deferring additional
 3      judicial effort and presumably party effort until after
 4      there's a final resolution of the underlying legal
 5      claims that are put in dispute.
 6              MR. PIROZZOLO:  The two considerations, I
 7      think, are an accounting, case by case, point by point,
 8      will take a very substantial amount of time --
 9              THE COURT:  Right.
10              MR. PIROZZOLO:  -- of the parties and then the
11      Court gets into it as to a matter which I am going to
12      guess is not going to be largely controverted.
13              The second is a huge discovery problem where,
14      while the case is still pending, to make available
15      billing records to the adversary, the nightmare of what
16      can be made available, what's privileged, what's not,
17      tips them off on trial strategy.  So it becomes a --
18              THE COURT:  Well, maybe it has a certain
19      voyeuristic quality.  I'm not sure that it has a large
20      strategic quality to it.
21              MR. PIROZZOLO:  A secret witness.
22              THE COURT:  Right.  But I guess my inclination
23      -- you look at it.  But my inclination is to say that
24      the judgment would simply say "and attorney's fee to be
25      determined following the finality of the judgment."
```

```
 1              MR. LEPORE:  Whatever.  We'll listen to any
 2   proposal that they have to give us on that, except as I
 3   told Mr. Pirozzolo earlier, so there's no confusion, the
 4   arbitration issue, we don't agree with the concept of
 5   having this arbitrated.
 6              MR. PIROZZOLO:  You don't agree with that?
 7              MR. LEPORE:  No, absolutely not.  And I've
 8   told you that before.
 9              THE COURT:  No.  I --
10              MR. LEPORE:  But otherwise, I'm almost
11   indifferent as you are, Your Honor, with respect to
12   this.  And whatever Mr. Pirozzolo and Black & Decker
13   decide to do, we'll consider seriously because it seems
14   to me to be a huge distraction that could take months
15   trying to deal with it.
16              THE COURT:  Okay.  Well, think it through and
17   then we'll deal with it.  But I --
18              MR. PIROZZOLO:  I think you got on my feet for
19   a moment.  I mean, arbitration would require an
20   agreement.  So, therefore, thinking it through, it would
21   be an issue to subsequently be resolved by the Court.
22              THE COURT:  Yes.  And my guess is that I would
23   want to give consideration to a Master to do it.
24              MR. PIROZZOLO:  We end up in substantially the
25   same place.
```